## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARVIN D. CHANCE, JR.,<br>on behalf of himself and<br>all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION, a Delaware<br>corporation, and INTEL KABUSHIKI<br>KAISHA, a Japanese corporation,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 05-1303-JTM |

## <u>DEFENDANT INTEL CORPORATION'S NOTICE OF REMOVAL</u>

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

Pursuant to 28 U.S.C. §§ 1332(d) and 1453(b), defendant Intel Corporation ("Intel")

hereby removes to this Court the state court action described below, on the basis of the Class

Action Fairness Act of 2005 ("CAFA"). In support of this notice, Defendant states:

1.      On August 22, 2005, plaintiff filed an action in the District Court of Seward

County, Kansas, entitled *Marvin D. Chance, Jr., on behalf of himself and all others similarly*

*situated, Plaintiff, versus Intel Corporation, a Delaware corporation and Intel Kabushiki*

*Kaisha, a Japanese corporation, Defendants*, as Civil Case No. 05-CV-97. The plaintiff,

Marving D. Chance, Jr., a Kansas resident, seeks damages against Intel for himself and a

purported class of similarly situated residents of eighteen Kansas counties for violations of the

Kansas Antitrust Act, Kan. Stat. Ann. § 50-101, et. seq.

2.    Both at the time of the commencement of this action in state court and as of the date of this removal, Intel Corporation was a Delaware corporation with its principle place of business in Santa Clara, California.

3.    This Court original jurisdiction under 28 U.S.C. § 1332(d)(2).  It is a class action in which the class population exceeds 100 members,[1] diversity exists between at least one plaintiff (Mr. Chance, a Kansas resident) and Intel, and the complaint generally alleges claims that facially involve an aggregate amount in controversy, including the requested statutory attorney's fees, in excess of the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), 1332(5)(b).

4.    Although plaintiff alleges without factual support that the class-wide claim is less than $5 million, *see* Complaint ¶ 11, Intel's fact-based estimate shows that the amount placed in controversy by Mr. Chance's Complaint exceeds $5 million.  *See* Declaration of Gregory F. Wells, attached as Exhibit A.  Plaintiff's conclusory allegation is not sufficient to defeat removal.

*See Yeroushalmi v. Blockbuster, Inc.,* No. CV 05-225-AHM(RCX), 2005 WL 2083008, at *2 (C.D. Cal. July 11, 2005) ("It is clear in the context of removal, even before CAFA, plaintiff's allegation simply does not control or end the amount in controversy analysis."); *see also* S. Rep. 109-14, at 44 (2005), *reprinted in* 2005 U.S.S.C.A.N. 3, 41-42 (if seeking remand, "plaintiff should have the burden of demonstrating that 'all matters in controversy' do not 'in the aggregate exceed the sum or value of $5,000,000,' exclusive of interest and costs...").

---

[1]    Plaintiff alleges that class numbers "at least in the thousands." (Complaint ¶ 34).

5.      The Wichita Division of the United States District Court for the District of Kansas is the proper venue because it is the district and division embracing the place where the state court action is pending.  *See* D. Kan. Rule 81.1(b).

6.      Intel's removal is timely.  Plaintiff served Intel Corporation with the summons and complaint on September 1, 2005, as reflected in plaintiff's proof of service, attached hereto as Exhibit B.

7.      Intel will promptly notify the plaintiff and the District Court of Seward County, Kansas of this removal.

8.      Pursuant to D. Kan. Rule 40.2, Intel designates the place of trial of this action as Wichita, Kansas.  This designation is without prejudice to the transfer of this case by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.

9.      Intel attaches hereto, as Exhibits C and D respectively, a true and correct copy of the Complaint and the Summons.

Respectfully submitted,


/s/Robert W. Coykendall
Tim J. Moore, SC#14104
Robert W. Coykendall, SC#10137
MORRIS, LAING, EVANS, BROCK
 & KENNEDY, CHARTERED
300 N. Mead, Suite 200
Wichita, Kansas 67202-2722
Telephone: (316) 262-2671
Facsimile: (316) 262-6226
Email: tmoore@morrislaing.com
        rcoykendall@morrislaing.com

3

and

David M. Balabanian
Christopher B. Hockett
Joy K. Fuyuno
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Richard A. Ripley
Gregory F. Wells
BINGHAM McCUTCHEN LLP
1120 20th Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

*Attorneys for Defendant*
*INTEL CORPORATION*

## CERTIFICATE OF SERVICE

      I hereby certify that on the <u>3rd</u> day of October, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Rex Sharp
Gunderson, Sharp & Walke, LLP
4121 West 83rd Street, Ste. 256
Prairie Village, KS 66208

                          /s/Robert W. Coykendall
                          Robert W. Coykendall

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MARVIN D. CHANCE, JR., on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF GREGORY F. WELLS

1.      My name is Gregory F. Wells.  I am over the age of 18 and competent to give testimony.  If called upon, I would testify as to the facts in this Declaration.

2.      I am an associate at the law firm of Bingham McCutchen LLP.  Bingham McCutchen represents Intel Corporation in this matter.

3.      According to its website (http://www.bls.gov/cps/home.htm), the Current Population Survey (CPS) is a monthly survey of households conducted by the Bureau of Census for the Bureau of Labor Statistics.  The Bureau of Census produces a tool called DataFerret (dataferret.census.gov) that allows detailed searching of the data in the CPS database.

4.      The CPS conducts an annual Computer and Internet Use Survey, which asks participants whether they own a personal computer and in what year the newest computer in their household was purchased.  The data for 2004 and 2005 (YTD) assume purchases equivalent to the most recent published survey, 2003.  The responses to these questions provide a direct estimate of the number of personal computers purchased in Kansas for each year:

| Year | New Computers Purchased |
|---|---|
| 2000 | 162,061 |
| 2001 | 112,672 |
| 2002 | 163,669 |
| 2003 | 179,042 |
| 2004 | 179,042 |
| 2005 (YTD)[1] | 134,282 |
| **TOTAL** | **930,768** |

5.　　　Plaintiff alleges that Intel has an 80 percent market share on a unit sales basis. *See* Complaint, ¶ 16. Multiplying this alleged market share (.80) by the total new computers purchased (930,768) results in an estimate that 744,614 home computers with Intel microprocessors were sold to Kansas households during the class period.

6.　　　Plaintiff's proposed class definition is limited to eighteen Kansas counties: Seward, Greeley, Hamilton, Stanton, Morton, Wichita, Kearney, Grant, Stevens, Scott, Finney, Haskell, Gray, Meade, Ford, Clark, Kiowa, and Comanche ("Class Counties"). *See* Complaint, ¶ 33.

7.　　　The Bureau of Census reported that, on average, from 2000-2003 (the most recent year for which data is available), 5.62 percent of the population of Kansas resides in the Class Counties. A copy of the Census data is attached as Exhibit 1 to this Declaration.

8.　　　Multiplying the estimated total number of Intel computers sold into Kansas (744,614) by the Class Counties' population percentage (.0562) results in an estimated 41,847 new Intel home computers purchased during the Class Period by purchasers in the Class Counties.[2]

---

[1]　　　2005 Year To Date includes purchases from January 1, 2005 through August 31, 2005.

[2]　　　This estimate understates the volume of computers sold into the Class Counties during the class period because the Census data does not include computers purchased by Kansas businesses. Plaintiff seeks damages with respect to those business computers as well. Complaint ¶ 33.

9.    Plaintiff seeks recovery of "full consideration under K.S.A. § 50-115 as the damages sustained by Plaintiff and the Class." *See* Complaint, Prayer For Relief, § 3.

10.   A plain reading of this prayer is that Plaintiff seeks to recover the purchase price of these computers. Assuming, only for purposes of estimating the amount in controversy, that the alleged class was entitled to recover that measure of damages, then the aggregate value of Plaintiff's claim exceeds $5 million if the average price paid for the estimated 41,847 computers in question was greater than $120.

11.   NexTag (www.nextag.com) is a comparison shopping website that compares the retail prices charged for consumer products over time. Using NexTag data for the 10 most popular desktop PCs sold, I was able to estimate that the average sales price of a desktop PC for 2005 was $463. That average price is nearly four times the level needed for the aggregate value of the claim that Plaintiff asserts to exceed $5 million. Plaintiff also seeks to recover for Intel processors sold in notebook computers which, as a general matter, are priced even higher.

Under penalty of perjury, I declare that the foregoing is true and accurate to the best of my knowledge.

Dated: October 3, 2005

Gregory D. Wells

## Annual Estimates of the Population for Counties of Kansas: April 1, 2000 to July 1, 2003

| Geographic Area | Population estimates | | | | April 1, 2000 | |
|---|---|---|---|---|---|---|
| | July 1, 2003 | July 1, 2002 | July 1, 2001 | July 1, 2000 | Estimates base | Census |
| **Kansas** | **2,723,507** | **2,711,769** | **2,700,453** | **2,692,643** | **2,688,814** | **2,688,418** |
| Allen County | 13,907 | 14,111 | 14,196 | 14,377 | 14,385 | 14,385 |
| Anderson County | 8,208 | 8,140 | 8,193 | 8,098 | 8,110 | 8,110 |
| Atchison County | 16,741 | 16,748 | 16,810 | 16,758 | 16,774 | 16,774 |
| Barber County | 5,034 | 5,084 | 5,158 | 5,291 | 5,307 | 5,307 |
| Barton County | 27,467 | 27,618 | 27,777 | 28,123 | 28,205 | 28,205 |
| Bourbon County | 15,086 | 15,175 | 15,362 | 15,388 | 15,379 | 15,379 |
| Brown County | 10,442 | 10,482 | 10,635 | 10,711 | 10,724 | 10,724 |
| Butler County | 61,127 | 60,428 | 59,928 | 59,690 | 59,482 | 59,482 |
| Chase County | 3,107 | 3,067 | 2,998 | 3,032 | 3,030 | 3,030 |
| Chautauqua County | 4,185 | 4,193 | 4,263 | 4,350 | 4,359 | 4,359 |
| Cherokee County | 21,815 | 21,982 | 22,263 | 22,556 | 22,606 | 22,605 |
| Cheyenne County | 2,955 | 3,035 | 3,093 | 3,159 | 3,165 | 3,165 |
| Clark County | 2,333 | 2,361 | 2,385 | 2,386 | 2,390 | 2,390 |
| Clay County | 8,573 | 8,694 | 8,761 | 8,831 | 8,822 | 8,822 |
| Cloud County | 9,859 | 9,950 | 10,081 | 10,221 | 10,268 | 10,268 |
| Coffey County | 8,815 | 8,819 | 8,831 | 8,880 | 8,865 | 8,865 |
| Comanche County | 1,915 | 1,964 | 1,986 | 1,956 | 1,967 | 1,967 |
| Cowley County | 35,860 | 36,364 | 35,951 | 36,279 | 36,291 | 36,291 |
| Crawford County | 38,398 | 38,109 | 38,289 | 38,222 | 38,242 | 38,242 |
| Decatur County | 3,295 | 3,377 | 3,434 | 3,461 | 3,472 | 3,472 |
| Dickinson County | 19,255 | 19,141 | 19,130 | 19,372 | 19,344 | 19,344 |
| Doniphan County | 8,149 | 8,179 | 8,250 | 8,247 | 8,249 | 8,249 |
| Douglas County | 102,983 | 102,200 | 101,076 | 100,182 | 99,965 | 99,962 |
| Edwards County | 3,275 | 3,344 | 3,385 | 3,430 | 3,449 | 3,449 |
| Elk County | 3,167 | 3,191 | 3,189 | 3,226 | 3,261 | 3,261 |
| Ellis County | 27,212 | 27,311 | 27,403 | 27,422 | 27,507 | 27,507 |
| Ellsworth County | 6,347 | 6,393 | 6,450 | 6,529 | 6,525 | 6,525 |
| Finney County | 39,176 | 39,432 | 40,192 | 40,617 | 40,523 | 40,523 |
| Ford County | 33,012 | 32,431 | 32,413 | 32,573 | 32,458 | 32,458 |
| Franklin County | 25,540 | 25,291 | 25,036 | 24,872 | 24,784 | 24,784 |
| Geary County | 26,313 | 26,417 | 27,204 | 27,760 | 27,947 | 27,947 |
| Gove County | 2,910 | 2,964 | 3,010 | 3,067 | 3,068 | 3,068 |
| Graham County | 2,808 | 2,863 | 2,881 | 2,922 | 2,946 | 2,946 |

Page 1

| | Annual Estimates of the Population for Counties of Kansas: April 1, 2000 to July 1, 2003 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Population estimates | | | | | April 1, 2000 | | |
| Geographic Area | July 1, 2003 | July 1, 2002 | July 1, 2001 | July 1, 2000 | Estimates base | Census |
| Grant County | 7,745 | 7,889 | 7,791 | 7,885 | 7,909 | 7,909 |
| Gray County | 6,063 | 6,046 | 5,967 | 5,922 | 5,904 | 5,904 |
| Greeley County | 1,420 | 1,461 | 1,532 | 1,542 | 1,534 | 1,534 |
| Greenwood County | 7,485 | 7,628 | 7,726 | 7,668 | 7,673 | 7,673 |
| Hamilton County | 2,666 | 2,661 | 2,677 | 2,665 | 2,670 | 2,670 |
| Harper County | 6,206 | 6,288 | 6,448 | 6,503 | 6,536 | 6,536 |
| Harvey County | 33,502 | 33,366 | 32,999 | 32,880 | 32,869 | 32,869 |
| Haskell County | 4,246 | 4,248 | 4,290 | 4,313 | 4,307 | 4,307 |
| Hodgeman County | 2,151 | 2,154 | 2,135 | 2,087 | 2,085 | 2,085 |
| Jackson County | 13,017 | 12,844 | 12,710 | 12,679 | 12,657 | 12,657 |
| Jefferson County | 18,798 | 18,700 | 18,579 | 18,465 | 18,426 | 18,426 |
| Jewell County | 3,433 | 3,508 | 3,621 | 3,763 | 3,791 | 3,791 |
| Johnson County | 486,515 | 476,009 | 463,974 | 454,514 | 451,476 | 451,086 |
| Kearny County | 4,591 | 4,607 | 4,600 | 4,515 | 4,531 | 4,531 |
| Kingman County | 8,382 | 8,399 | 8,568 | 8,677 | 8,673 | 8,673 |
| Kiowa County | 3,152 | 3,116 | 3,138 | 3,255 | 3,278 | 3,278 |
| Labette County | 22,259 | 22,339 | 22,479 | 22,750 | 22,834 | 22,835 |
| Lane County | 1,946 | 2,001 | 2,094 | 2,144 | 2,155 | 2,155 |
| Leavenworth County | 71,546 | 70,959 | 69,863 | 68,911 | 68,691 | 68,691 |
| Lincoln County | 3,498 | 3,503 | 3,554 | 3,574 | 3,578 | 3,578 |
| Linn County | 9,722 | 9,705 | 9,700 | 9,602 | 9,570 | 9,570 |
| Logan County | 2,855 | 2,945 | 2,989 | 3,047 | 3,046 | 3,046 |
| Lyon County | 35,805 | 35,774 | 35,967 | 35,962 | 35,935 | 35,935 |
| McPherson County | 29,346 | 29,362 | 29,524 | 29,585 | 29,554 | 29,554 |
| Marion County | 13,299 | 13,311 | 13,396 | 13,375 | 13,361 | 13,361 |
| Marshall County | 10,589 | 10,648 | 10,816 | 10,937 | 10,965 | 10,965 |
| Meade County | 4,662 | 4,692 | 4,684 | 4,638 | 4,631 | 4,631 |
| Miami County | 29,187 | 28,950 | 28,692 | 28,497 | 28,351 | 28,351 |
| Mitchell County | 6,707 | 6,693 | 6,771 | 6,914 | 6,932 | 6,932 |
| Montgomery County | 34,934 | 35,229 | 35,794 | 36,196 | 36,254 | 36,252 |
| Morris County | 5,995 | 6,017 | 6,077 | 6,113 | 6,104 | 6,104 |
| Morton County | 3,317 | 3,352 | 3,372 | 3,485 | 3,496 | 3,496 |
| Nemaha County | 10,500 | 10,472 | 10,447 | 10,692 | 10,717 | 10,717 |
| Neosho County | 16,580 | 16,712 | 16,883 | 16,946 | 16,997 | 16,997 |

Page 2

**Annual Estimates of the Population for Counties of Kansas: April 1, 2000 to July 1, 2003**

| Geographic Area | Population estimates | | | | April 1, 2000 | |
| --- | --- | --- | --- | --- | --- | --- |
| | July 1, 2003 | July 1, 2002 | July 1, 2001 | July 1, 2000 | Estimates base | Census |
| Ness County | 3,158 | 3,285 | 3,354 | 3,442 | 3,454 | 3,454 |
| Norton County | 5,796 | 5,830 | 5,862 | 5,954 | 5,953 | 5,953 |
| Osage County | 16,784 | 16,804 | 16,721 | 16,767 | 16,715 | 16,712 |
| Osborne County | 4,179 | 4,281 | 4,351 | 4,433 | 4,452 | 4,452 |
| Ottawa County | 6,177 | 6,197 | 6,146 | 6,195 | 6,163 | 6,163 |
| Pawnee County | 6,796 | 6,914 | 7,034 | 7,219 | 7,233 | 7,233 |
| Phillips County | 5,657 | 5,760 | 5,871 | 6,000 | 6,001 | 6,001 |
| Pottawatomie County | 18,714 | 18,429 | 18,336 | 18,285 | 18,209 | 18,209 |
| Pratt County | 9,437 | 9,572 | 9,536 | 9,630 | 9,647 | 9,647 |
| Rawlins County | 2,843 | 2,883 | 2,905 | 2,960 | 2,966 | 2,966 |
| Reno County | 63,832 | 63,993 | 64,446 | 64,681 | 64,790 | 64,790 |
| Republic County | 5,307 | 5,443 | 5,659 | 5,804 | 5,835 | 5,835 |
| Rice County | 10,412 | 10,519 | 10,628 | 10,738 | 10,761 | 10,761 |
| Riley County | 62,291 | 61,521 | 61,998 | 62,897 | 62,842 | 62,843 |
| Rooks County | 5,417 | 5,487 | 5,581 | 5,662 | 5,685 | 5,685 |
| Rush County | 3,418 | 3,464 | 3,516 | 3,541 | 3,551 | 3,551 |
| Russell County | 6,907 | 7,025 | 7,144 | 7,349 | 7,370 | 7,370 |
| Saline County | 53,737 | 53,902 | 53,785 | 53,603 | 53,597 | 53,597 |
| Scott County | 4,806 | 4,923 | 5,086 | 5,099 | 5,120 | 5,120 |
| Sedgwick County | 462,896 | 460,643 | 456,351 | 453,463 | 452,869 | 452,869 |
| Seward County | 23,091 | 22,994 | 22,629 | 22,541 | 22,510 | 22,510 |
| Shawnee County | 170,902 | 170,314 | 170,380 | 170,047 | 169,868 | 169,871 |
| Sheridan County | 2,662 | 2,669 | 2,712 | 2,802 | 2,813 | 2,813 |
| Sherman County | 6,277 | 6,422 | 6,638 | 6,738 | 6,760 | 6,760 |
| Smith County | 4,181 | 4,294 | 4,425 | 4,522 | 4,536 | 4,536 |
| Stafford County | 4,589 | 4,665 | 4,737 | 4,768 | 4,789 | 4,789 |
| Stanton County | 2,404 | 2,428 | 2,414 | 2,405 | 2,406 | 2,406 |
| Stevens County | 5,389 | 5,340 | 5,359 | 5,463 | 5,463 | 5,463 |
| Sumner County | 25,256 | 25,484 | 25,739 | 25,982 | 25,946 | 25,946 |
| Thomas County | 7,933 | 8,049 | 8,143 | 8,175 | 8,180 | 8,180 |
| Trego County | 3,103 | 3,141 | 3,237 | 3,286 | 3,319 | 3,319 |
| Wabaunsee County | 6,767 | 6,762 | 6,813 | 6,876 | 6,885 | 6,885 |
| Wallace County | 1,621 | 1,685 | 1,700 | 1,737 | 1,749 | 1,749 |
| Washington County | 6,131 | 6,213 | 6,304 | 6,469 | 6,483 | 6,483 |

Page 3

## Annual Estimates of the Population for Counties of Kansas: April 1, 2000 to July 1, 2003

| Geographic Area | Population estimates | | | | April 1, 2000 | |
|---|---|---|---|---|---|---|
| | July 1, 2003 | July 1, 2002 | July 1, 2001 | July 1, 2000 | Estimates base | Census |
| Wichita County | 2,447 | 2,508 | 2,541 | 2,523 | 2,531 | 2,531 |
| Wilson County | 10,080 | 10,115 | 10,248 | 10,306 | 10,332 | 10,332 |
| Woodson County | 3,631 | 3,650 | 3,780 | 3,764 | 3,788 | 3,788 |
| Wyandotte County | 157,091 | 157,715 | 158,474 | 157,828 | 157,882 | 157,882 |

Note: The April 1, 2000 Population Estimates base reflects changes to the Census 2000 population from the Count Question Resolution program and geographic program revisions.

Suggested Citation:

Table 1: Annual Estimates of the Population for Counties of Kansas: April 1, 2000 to July 1, 2003 (CO-EST2003-01-20)

Source: Population Division, U.S. Census Bureau

Release Date: April 9, 2004

Page 4

**EXHIBIT B**

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
09/01/2005
Log Number 510510412

EVA
Roy
CC
(File)

TO:     Kristin Siebert
        Intel Corporation
        SC4-202, 2200 Mission College Boulevard
        Santa Clara, CA, 95052-8119

**RECEIVED**

SEP - 2 2005

RE:     **Process Served in Kansas**

FOR:    Intel Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Marvin D. Chance, Jr., Pltf. vs. Intel Corporation, Dft. |
| **DOCUMENT(S) SERVED:** | Summons & First Amended Petition; Demand for Jury Trial; Attorneys Lien Asserted. |
| **COURT/AGENCY:** | Seward County District Court - Kansas, KS<br>Case # 05CV97 |
| **NATURE OF ACTION:** | Class Action - Antitrust regarding microprocessors; request for certification as class action. |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Inc., Topeka, KS |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 09/01/2005 postmarked on 08/31/2005 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Rex A. Sharp<br>Gunderson Sharp & Walke, LLP<br>4121 West 83rd Street<br>Suite 256<br>Prairie Village, KS, 66208 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight, 790631875036<br>Email Notification, Kristin Siebert KRISTIN.SIEBERT@INTEL.COM<br>Email Notification, Janet Craycroft janet.craycroft@intel.com |
| **SIGNED:** | The Corporation Company, Inc. |
| **ADDRESS:** | 515 South Kansas Avenue<br>Topeka, KS, 66603 |
| **TELEPHONE:** | 785-233-0593 |

Page 1 of 1 / LM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.

# EXHIBIT C

# IN THE DISTRICT COURT
## SEWARD COUNTY, KANSAS

MARVIN D. CHANCE, JR.,    )
on behalf of himself and    )
all others similarly situated,    )
    )
    Plaintiff,    )
    )
v.    )    Case No. 05-CV-97
    )
INTEL CORPORATION, a Delaware    )
corporation, and INTEL KABUSHIKI    )
KAISHA, a Japanese corporation,    )
    )
    Defendants.    )
_____)

(Pursuant to Chapter 60)

## FIRST AMENDED CLASS ACTION PETITION[1]

Marvin D. Chance, Jr. ("Plaintiff"), by and through his undersigned attorneys, allege against INTEL CORPORATION and its worldwide family of dominated subsidiaries, including INTEL KABUSHIKI KAISHA, (hereafter collectively, "Intel") an antitrust violation and on information and belief would show the Court and jury as follows:

### NATURE OF THE ACTION

1.    Intel manufactures x86 microprocessors, the central processing unit (CPU) of most computer systems. The microprocessor processes system data and controls other devices in the system, acting as the "brains" of the computer. Intel's microprocessors run the popular Microsoft Windows and Linux families of operating systems.

---

[1] This Amended Petition is the same as the Original Petition except it omits the previously attached exhibits which Intel already has or has access to.

2.     In 2004, Intel's revenue from sales of microprocessors was $24.5 billion, approximately 72% of its consolidated net revenue of $34.2 billion. *See* Intel Corporation's 2004 Form 10-K (hereafter "10-K"), at 2, 30.

3.     As Intel proudly declares in the opening sentences of its Form 10-K for the year ended December 25, 2004, it is "the world's largest semiconductor chipmaker. . . [It's] goal is to be the preeminent building block supplier to the worldwide digital economy." *See* 10-K at 1

4.     To achieve its goal of being "the preeminent building block supplier to the worldwide digital economy," Intel engaged in numerous anticompetitive strategies, including threats, intimidation, kickbacks, and retaliation. Intel designed these strategies to quash product-based competition on price and performance in the microprocessor industry. The specific strategies are more completely detailed in the Complaint filed in *Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. v. Intel Corporation and Intel Kabushiki Kaisha,* Case No. 1:05-cv-00441, (USDC DE, June 27, 2005) ("the AMD Complaint").

5.     By its own admission, Advanced Micro Devices, Inc. (AMD) is Intel's primary microprocessor competitor. *See* 10-K at p. 13.

6.     In addition to direct competitors like AMD, Intel's anticompetitive strategies impact consumers of computers operating with Intel microprocessors. The inability of AMD and other microprocessor manufacturers to compete fairly and openly in the worldwide digital economy deprives consumers of the right to buy the best product to suit their needs at the lowest price. *See* Reuters article, "AMD files antitrust suit against Intel," June 28, 2005. As detailed in the AMD

2

Complaint, "[c]onsumers ultimately foot this bill, in the form of inflated PC prices and the loss of freedom to purchase computer products that best fit their needs. Society is worse off for lack of innovation that only a truly competitive market can drive." AMD Complaint, at 3, ¶ 6.

7.     Plaintiff Marvin D. Chance, Jr., is a consumer of computers using Intel microprocessors. As such, he and the Class he seeks to represent are indirect purchasers of Intel's x86 microprocessors who have been damaged by Intel's anticompetitive, monopolistic conduct in violation of Kansas' antitrust statutes. Consequently, Plaintiff and the Class (plaintiffs) seek overcharge and full consideration damages, statutory penalties, attorneys' fees, and costs.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court under the Kansas antitrust statutes, K.S.A. 50-101, et seq., pursuant to the Kansas long arm statute K.S.A. 60-308(b)(1), (2), and/or (7), and general jurisdiction. Intel's monopolistic conduct in the sale and distribution of its microprocessors adversely affects and has affected the Kansas market for computers installed with Intel microprocessors and has directly damaged plaintiffs.

9.     Venue is proper in this Court because Intel transacted business, committed an illegal or tortious act, substantially affected the Kansas trade and commerce in the computer microprocessor market, and injured plaintiffs in Seward County, Kansas where Plaintiff bought computers with Intel microprocessors.

10.    Plaintiff and each member of the class has incurred damages under Kansas law in an amount less than $75,000, even if trebled, and neither plaintiffs nor

3

any other member of the class seeks damages exceeding $75,000, nor do their damages individually exceed $75,000 inclusive of interest and attorneys' fees and all relief of any nature sought hereunder.  Further plaintiffs assert no federal question or statute and plaintiffs' state law causes of action are not federally preempted.  Plaintiffs allege a cause of action solely under the laws of Kansas and specifically deny any attempt to state a cause of action under the laws of the United States of America including without limitation the Sherman Antitrust Act.

11.     More than 2/3rds of the members of the proposed plaintiff class are residents of Kansas.  All class members were principally harmed in Kansas.  No injunctive relief is sought. The class-wide claim is **less than** $5 million. No other class claims have been filed by anyone in the prior three years asserting the same or similar factual allegations against any of the defendants.

### THE PARTIES

12.     Plaintiff Marvin D. Chance, Jr. is a resident of Seward County, Kansas, who purchased a personal computer with an Intel microprocessor during the Class Period.

13.     Defendant INTEL CORPORATION is a Delaware corporation with its principal executive offices at Santa Clara, California, and it conducts business both directly and through wholly-owned and dominated subsidiaries worldwide. Intel and its subsidiaries design, produce, and sell a variety of microprocessors, flash memory devices, and silicon-based products for use in the computer and communications industries worldwide.  *See* 10-K, List of Subsidiaries.

14.     Intel is a foreign corporation registered with the Kansas Secretary of State. It is currently active and in good standing.

4

15.     Defendant INTEL KABUSHIKI KAISHA ("Intel KK"), a Japanese corporation, is Intel's wholly owned and dominated subsidiary through which Intel sells its microprocessors in Japan.  *See* 10-K, List of Subsidiaries.

### THE MICROPROCESSOR MARKET

16.     For many years, Intel's x86 microprocessors have garnered 90% of the revenue and 80% of the units sold in the world's microprocessor market.

17.     As reported in Intel's 2004 10-K, at 31, Intel had net consolidated revenue from the sales of microprocessors of almost $ 24.5 billion, an increase of $3.0 billion from the prior year.

18.     With $24.5 billion in worldwide revenue from sales of Intel microprocessors, such sales in Kansas account for many millions of dollars per year.

19.     Published reports identify Intel as the market leader with over 90% of the market share as measured by revenue.  AMD is second with 9%.  Other manufacturers make up the remaining 1%.

20.     With over 90% of the market, Intel's monopoly enables it to control pricing for the microprocessors, achieving gross margin percentages approaching 60%. *See* 10-K at 30. *See* Intel Business Outlook (reporting expected gross margin percentage for 2005 as 59%).

21.     Despite attempted entries into the computing market by other microprocessor manufacturers, Intel has captured the Windows and Linux operating systems that dominate the consumer and business worlds.  Other microprocessors cannot be substituted, giving Intel a captive market.

22.     Moreover, computer manufacturers will not invest in developing
alternative computer architectures because it is impractical.  First, the cost of
switching consumers to computers using other microprocessors is too great given
the need to replace hardware and software when compared with upgrading.
Second, the market of new first time users is too small to create competition in a
generally already entrenched market.  Third, competitors cannot meet the huge
barriers to entry, such as construction of fabrication facilities and funding of
research and development costs.  Fourth, with the exception of AMD, the two
remaining competitors in the microprocessor market, Transmeta Corporation
and Via Technologies, Inc., are struggling with around 1% of the market.

23.     Hence, the computer microprocessor market is essentially homogenous.  It
is the same from country to country, state to state, city to city.  Further, the ease
of shipping microprocessors worldwide maintains price consistency which, in
turn, deters arbitrage.

24.     To combat Intel's monopoly, AMD compelled arbitration under the 1982
AMD-Intel Technology Exchange Agreement and prevailed after seven years of
litigation and appeals.  After confirmation of the arbitration award by the
California Supreme Court in 1994, the arbitrator expressed hope that "the
competition sure to follow will be beneficial to the parties through an expanded
market with appropriate profit margins and to the consumer worldwide through
lower prices." *See* AMD Complaint at 7, ¶16.

25.     However, even after losing the arbitration battle, Intel still intended, at
that time, and to this day, to become the "preeminent building block supplier to

6

the worldwide digital economy" and recommitted to its anticompetitive strategies

in order to achieve its monopolistic goal. *See* AMD Complaint at 6, ¶15.

26.     These strategies include:

     a.      Forcing major customers into exclusive or near-exclusive deals;

     b.      Conditioning rebates, allowances and market development funding

on customers' agreements to minimize or eliminate its purchases of

microprocessors from competitors, particularly AMD;

     c.      Establishing a tiered system of retroactive, first-dollar rebates to

serve as an incentive for the customers' purchase of microprocessors at

high volumes that effectively locked in Intel as the supplier and locked out

other microprocessor manufacturers;

     d.      Threatening retaliation against customers introducing other

manufacturers' computer platforms, particularly in strategic market

segments;

     e.      Enforcing quotas among key retailers and requiring them to stock

overwhelmingly, if not exclusively, Intel-powered computers thereby

limiting consumers' choice;

     f.      Providing financial rewards through the "Intel Inside" and

"Centrino" programs to OEM customers for branding their personal

computers with "Intel" indicators;

     g.      Forcing PC makers and technology partners to boycott other

manufacturers' product launches and promotions;

7

h.     Forcing technical standards and products on the industry to secure

for itself and to prevent competitors from altering the microprocessor

market.

27.    Intel particularly targeted its "primary competitor" AMD by the use of

these abusive, exclusionary tactics. *See* AMD Complaint at 15-41.

28.    Further, these tactics are unlawfully exclusionary, have no pro-competitive

justification, and are intended to maintain Intel's monopoly of the x86

microprocessor market.

29.    They are anticompetitive tactics in that they prevented distribution of

competing products, stifled innovation, wrongfully induced retailers and

distributors to stop carrying the competitors' products, and reduced or

eliminated competitors' meaningful access to computer manufacturers, trade

shows, and ultimately consumers, all of which had the combined intent and effect

of preserving Intel's monopoly.

30.    In Kansas, these abusive monopolistic practices effectively eliminated the

consumers' right to purchase the best computing product to suit their needs at

the most competitive price.

31.    The above mentioned abusive monopolistic practices by Intel have had the

following effects on Kansas consumers:

i.     Restraint or elimination of competition in the sale of computers in

Kansas;

ii.    Injury to actual and potential competitors in the Kansas market; and

iii.   Higher prices to Kansas consumers who were deprived of the benefits

of free, competitive, innovative, and unrestrained markets.

8

32.     As a result of Intel's monopolistic practices, Plaintiff and the Class have

paid higher prices for computers than they would have paid in a competitive

market and have been injured thereby.

## CLASS ALLEGATIONS

33.     Plaintiff brings this action under KSA 60-223(a), and (b) (3) on behalf of

himself and a "Class" defined as:

> Individuals or entities who have purchased for end use and not for resale,
> computers with Intel microprocessors at any time from January 1, 2000 to
> the present (the "Class Period") who reside in or have their purchasing
> entity in the Kansas counties of Seward, Greeley, Hamilton, Stanton,
> Morton, Wichita, Kearney, Grant, Stevens, Scott, Finney, Haskell, Gray,
> Meade, Ford, Clark, Kiowa, and Comanche.

34.     Numerosity.  Plaintiff does not know the exact number of class members,

but reasonably believes that the class members number at least in the thousands

and are geographically dispersed throughout the aforementioned Kansas counties

such that joinder of all class members is impracticable.

35.     Commonality.  There are questions of law and/or fact, common to the

class, including but not limited to:

a.     Whether the Kansas computing market is the relevant market for
determining whether a monopoly exists;

b.     Whether Intel, individually or in consort with its subsidiaries and
affiliates, collectively, have monopoly power in the Kansas
computing market;

c.     Whether Intel willfully maintained monopoly power or restrained
competition in the computing market;

d.     Whether Intel engaged in anticompetitive behavior unilaterally or
in combination with others in order to maintain its monopoly in the
microprocessor market;

e.     Whether Intel's monopolistic conduct caused artificial and non-
competitive pricing for computers sold in Kansas;

9

      f.    Whether Plaintiffs and class members were injured by Intel's conduct and, if so, the appropriate class-wide measure of damages.

36.    <u>Typicality and Adequacy</u>.  Plaintiff's claims are typical of the claims of the Class who bought computers with Intel x86 microprocessors in the aforementioned Kansas counties, including Seward County, and who seek effectively the same relief of monetary damages.  Plaintiff will fairly and adequately represent the interests of the Class and has no conflicts with any member of the Class.  Furthermore Plaintiff has retained competent legal counsel experienced in Kansas antitrust and class action litigation.

37.    <u>Common questions of law and/or fact predominate and class actions are superior under K.S.A. 60-223(b)(3)</u>.  A class action to resolve these issues is far superior for the fair and efficient adjudication of the controversy so as to concentrate the litigation in a single proceeding to eliminate the burden on the courts and the parties.  Thousands of lawsuits throughout the state of Kansas would be undesirable, unmanageable, and cost prohibitive.  Whatever difficulties may exist in the management of the class action will be greatly outweighed by the class action procedure.

## TOLLING OF STATUTE OF LIMITATIONS

38.    Intel's monopolistic practices tolled the statute of limitations due to one or more of the following theories:

    (a)  Fraudulent concealment of its anticompetitive strategies which could not be recognized in isolation by a consumer, but was only obvious in the aggregate over time due to Intel's systematic attempt to conceal its true anticompetitive effect;

10

    (b)  Equitable tolling because Intel should not be able to benefit from its improper and illegal conduct;

    (c)  Discovery rule because Plaintiff and the Class were unable to reasonably discern the monopolistic practice and the harm that it was causing; and

    (d)  Continuous tort from the systematic and continuing monopolistic practices of Intel over the Class Period.

## CAUSE OF ACTION I

### Kansas Antitrust Cause of Action
### for Unlawful Maintenance of Monopoly and for Restraint of Trade
### K.S.A. 50-101, et seq.

39.    Plaintiffs restate and re-allege paragraphs 1-38 above.

40.    Through the anticompetitive and illegal conduct described above, Intel willfully maintains and, since 2000, has maintained a monopoly in the microprocessor market. That monopoly deprives consumers of a free market economy in the sale of computers in the United States, including Kansas.

41.    Intel, unilaterally or in combination with others, has unreasonably restrained trade in the microprocessor market.

42.    As a direct and proximate result of the above described conduct by Intel, Plaintiff and the Class have been injured in an amount which will be established on a class-wide basis at trial.

## PRAYER FOR RELIEF

Plaintiff and the Class respectfully request:

11

1.      That the Court declare and adjudge this action to be a proper class action pursuant to K.S.A. 60-223;

2.      That the Court find and adjudge that Intel has committed the violations of Kansas antitrust law stated here in;

3.      That the Court enter judgment in favor of the Plaintiff and Class against Intel for full consideration under K.S.A. 50-115 as the damages sustained by Plaintiff and the Class;

4.      That the Court enter judgment in favor of the Plaintiff and the Class against Intel for treble damages under K.S.A. 50-801;

5.      That Plaintiff and the Class be awarded the cost of suit, including reasonable attorneys' fees;

6.      That the Court enter a judgment that Intel and its wholly-owned subsidiaries are jointly and severally liable for the damages sustained from its monopolistic conduct;

7.      That Plaintiff and the Class be granted such other and further relief as the Court may deem proper.

**JURY TRIAL DEMANDED**
**ATTORNEYS' LIEN ASSERTED**

Respectfully submitted,

Rex A. Sharp KBA # 12350
Barbara C. Frankland KBA # 14198
Gunderson, Sharp & Walke, L.L.P.
4121 W. 83rd St., Ste. 256
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax

**EXHIBIT D**

IN THE DISTRICT COURT OF SEWARD COUNTY, KANSAS

MARVIN D. CHANCE, JR.
_____
                    PLAINTIFF

                    VS

INTEL CORPORATION
_____
                    DEFENDANT

CASE NO. 05 CV 97
DIVISION _____
K.S.A. CHAPTER 60

AHY
TO SHERIFF
7-7-05
COURT CLERK

SUMMONS

ORIGINAL

BY___DC___

## TO THE ABOVE-NAMED DEFENDANT:

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer to the petition with the court and to serve a copy upon the plaintiff's attorney as follows:

NAME:_____Rex A. Sharp_____

ADDRESS:_____Gunderson, Sharp & Walke, L.L.P.

_____4121 West 83rd Street, Suite 256

_____Prairie Village, KS 66208

within 30 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the attached petition, which is incorporated herein by reference. Any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.

(SEAL)

                                        Deputy
                                        Clerk of the District Court

DATED:_____7-7-05_____          BY: _Deborah Copeland_

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

### RETURN OF SERVICE OF SUMMONS

STATE OF_____)
COUNTY OF_____) SS.

I hereby certify that on the _____ day of _____, 20_____, I served the foregoing summons, together with a copy of the petition_____
upon the defendant_____
by delivering to_____
at_____at
_____a.m./p.m. in the County of _____, State of _____.

_____     _____     _____
Signature                   Title               County & State

### OUT OF STATE CLERK'S CERTIFICATE

Subscribed and sworn to before me this date, by above deputy, who I certify was at the date of such service and now is _____ of _____ County in the State of _____ and is authorized to service process in civil actions within said state and is an officer of the court of which I am the clerk. Witness my hand and the seal of this Court.
(SEAL)
DATE:_____          _____
                                                CLERK

## IN THE DISTRICT COURT OF SEWARD COUNTY, KANSAS

MARVIN D. CHANCE, JR.
_____
              **PLAINTIFF**

    VS

INTEL CORPORATION
_____
              **DEFENDANT**

CASE NO. 05 C V 97
DIVISION _____
K.S.A. CHAPTER 60

## SUMMONS

### TO THE ABOVE-NAMED DEFENDANT:

        You are hereby notified that an action has been commenced against you in this court. You are required to file your answer to the petition with the court and to serve a copy upon the plaintiffs attorney as follows:

           NAME:_____Rex A. Sharp____

           ADDRESS:_____Gunderson, Sharp & Walke, L.L.P.

                    _____4121 West 83rd Street, Suite 256

                    _____Prairie Village, KS 66208

within 30 days after service of summons upon you.

        If you fail to do so, judgment by default will be taken against you for the relief demanded in the attached petition, which is incorporated herein by reference. Any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.

(SEAL)

DATED: _____7-7-05_____

Deputy
Clerk of the District Court

BY: _Wilerah Copeland_

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

### RETURN OF SERVICE OF SUMMONS

STATE OF_____)
COUNTY OF_____) SS.
        I hereby certify that on the _____ day of _____, 20_____, I served the foregoing summons, together with a copy of the petition_____
upon the defendant_____
by delivering to_____
at_____at
_____a.m./p.m. in the County of _____, State of _____.

_____     _____     _____
Signature                     Title            County & State

### OUT OF STATE CLERK-S CERTIFICATE

Subscribed and sworn to before me this date, by above deputy, who I certify was at the date of such service and now is _____ of _____ County in the State of _____ and is authorized to service process in civil actions within said state and is an officer of the court of which I am the clerk. Witness my hand and the seal of this Court.
(SEAL)
DATE:_____

_____
             CLERK