UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MARVIN D. CHANCE, JR., on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. 6:05-cv-01303-JTM-KMH ) ) ) ) ) ) ) |

**DEFENDANT INTEL CORPORATION'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Defendant Intel Corporation ("Intel") respectfully submits its opposition to plaintiff Marvin D. Chance, Jr.'s ("Chance") motion to remand. Just like the 52 other pending MDL 1717 actions that assert the same claims on behalf of Kansas consumers, this case belongs in federal court. As demonstrated below, plaintiff's argument disputing this Court's jurisdiction relies on authorities and legal principles that pre-date the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and that no longer apply. Congress expressly intended CAFA to significantly expand the jurisdiction of federal courts over interstate class actions like this one. Consistent with that expansion, CAFA imposes specific factual burdens that a named plaintiff in a class action must meet to defeat federal jurisdiction.

Plaintiff, who submitted no evidence to support his position, has utterly failed to satisfy those burdens. To the contrary, Intel – the only party to present a fact-based estimate of the amount in controversy – has submitted more than enough evidence to meet even the pre-CAFA standard for removal. Thus, plaintiff's motion to remand should be denied and this action should

be consolidated with the dozens of other copycat federal antitrust actions against Intel that have been consolidated as part of MDL 1717, *In re Intel Corp. Microprocessor Antitrust Litigation*.

**I.      Factual Background.**

Chance commenced this action in Kansas state court on August 22, 2005. His complaint is one of 72 putative antitrust class actions recently filed against Intel ("Related Actions") pending in multiple federal courts. Seventy of these cases were originally filed in federal court; plaintiff's complaint is one of only two originally filed in state court (both of which Intel removed). Plaintiff alleges, on behalf of all persons or entities in eighteen Kansas counties ("Class Counties") that bought a computer or other device containing an Intel microprocessor in the past four years, that Intel violated the Kansas Antitrust Act ("KAA"), Kan. Code Ann. § 50-101, et seq., in a manner that (in some unspecified way) raised the price paid for every one of those devices. (First Amended Petition ("Petition") ¶¶ 32, 39-42).[1] At least 52 of the Related Actions also seek to assert claims under the Kansas Antitrust Act, and encompass the same putative class of consumers alleged here. (*See* DE 6, Defendant Intel Corporation's Motion to Stay, Ex. 1 ¶ 4). Forty-eight of those actions were filed before Chance commenced this action on August 22, 2005. (*Id.*).

On July 5, 2005, the plaintiffs in *Brauch et al. v. Intel Corp.*, No. C-02-2743 (N.D. Cal.), filed a petition before the Judicial Panel on Multidistrict Litigation ("JPML") to transfer and consolidate the Related Actions to a single MDL court pursuant to 28 U.S.C. § 1407. The MDL proceeding has been entitled *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL 1717.

---

[1]     Although styled a First Amended Petition, this is the first Complaint actually filed in this case.

On October 4, 2005, Intel filed a notice with the JPML identifying this case as a related, tag-along action.

On November 8, 2005, the JPML issued a Transfer Order which centralized the Related Actions subject to the MDL 1717 Petition before the Honorable Joseph J. Farnan of the United States District Court for the District of Delaware. Because Intel identified this case as a potential "tag-along" action to MDL 1717, the JPML will issue a Conditional Transfer Order ("CTO") shortly. *See* JPML Rule 7.4(a), 199 F.R.D. 425, 435 (2001). Unless the plaintiff objects to transfer, the CTO will be filed with the clerk of the Delaware District Court 15 days later, at which point that court will assume sole jurisdiction over this matter. *See In re Baycol Prods. Liability Litig.*, 269 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003).

As discussed in Intel's Motion to Stay and Reply Brief, the issues presented by plaintiff's remand motion should be decided by the MDL court after transfer to promote judicial efficiency and to minimize the risk of inconsistent decisions. Because that stay motion remains pending as of the deadline for opposing Plaintiff's Motion to Remand, Intel is submitting this response to preserve its position.

II.  **Removal Was Proper Because This Court Has Subject Matter Jurisdiction Over Plaintiff's Complaint Under the Class Action Fairness Act.**

In 2005, Congress enacted the Class Action Fairness Act. Congress explained that CAFA was "intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court …." S. REP. NO. 109-14, at *43 (2005). CAFA vests this Court with original jurisdiction over purported class actions where (i) the class population exceeds 100 members; (ii) diversity exists between at least one putative class member and one defendant, and

(iii) the aggregated alleged claims have a value in excess of $5,000,000, including aggregated attorney's fees but exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).

Chance challenges only one of these prerequisites: the value of the claim that he asserts on behalf of computer purchasers in the Class Counties. (Plaintiff's Motion to Remand ("Motion") at 10-11). However, plaintiff's position ignores both CAFA's plain language and Congress' intent in enacting it. Plaintiff mistakenly claims (1) that CAFA did not change the removal law and, therefore, there exists a presumption, post-CAFA, favoring remand of interstate class actions, *see* Motion at 2-4, and (2) that Intel has the burden of proof to "a legal certainty" on the amount in controversy requirement. *Id*. at 6-7. As demonstrated below, neither of these propositions is correct under CAFA.

With respect to the amount in controversy, Intel presented factual evidence from public sources that provides a bona fide estimate that the aggregate value of Chance's claims, as alleged, exceed the jurisdictional threshold. Chance failed to rebut this showing with any facts to the contrary. Thus, the record before this Court supports Intel's assertion of subject matter jurisdiction under CAFA.

    **A.    CAFA Expanded Federal Jurisdiction Over Class Actions by Eliminating Any Presumption in Favor of Remand and Shifting to the Plaintiff the Burden of Demonstrating that Federal Jurisdiction Does Not Exist.**

Chance incorrectly states that "[t]he removal statute is strictly construed against removal jurisdiction, all doubts being resolved in favor of remand." (*See* Motion at 3 & n.4). That is exactly backwards of the law after CAFA, in particular with respect to the amount in controversy element. Congress explained that "[when] a federal court is uncertain about whether 'all matters

in controversy' in a purported interstate class action 'do not in the aggregate exceed the sum or value of $5,000,000,' <u>the court should err in favor of exercising jurisdiction over the case</u>." S. REP. NO. 109-14, at *42 (emphasis added).

This expansive interpretation of the diversity jurisdiction statute lies at the very heart of Congressional intent behind CAFA:

> [CAFA] corrects a flaw … that prevents most interstate class actions from being adjudicated in federal courts. One of the primary historical reasons for diversity jurisdiction 'is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court.' <u>Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court</u>.
>
> \* \* \*
>
> <u>Thus, [CAFA] makes it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, creates efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court, places the determination of more interstate class action lawsuits in the proper forum - the federal courts</u>.

S. REP. NO. 109-14 at *5 (emphases added).

Accordingly, the pre-CAFA cases that Chance cites to support his argument that jurisdiction over this action should be strictly construed are inapposite. (*See* Motion at 3 & n.4).

Chance also mistakenly claims that Intel "faces a heavy burden" of establishing this Court's jurisdiction. (*See* Motion at 4). This is also incorrect; under CAFA, it is the <u>plaintiff</u> who has the burden of demonstrating that the matter in controversy does not exceed an aggregate value of $5 million when moving to remand. S. REP. NO. 109-14, at *44 ("if a plaintiff seeks to have a purported class action remanded for lack of federal diversity jurisdiction under subsection

1332(d)(5)(B) ('limited scope' class actions), that plaintiff should have the burden of demonstrating that 'all matters in controversy' do not 'in the aggregate exceed the sum or value of $5,000,000, exclusive of interest and costs'").

Plaintiffs' denigration of the legislative history behind CAFA – which clearly articulates Congressional intent in enacting the CAFA statute – is misplaced and is contrary to the weight of judicial authority interpreting this new statute. The CAFA statute is silent on the issue of who bears the burden of proving whether federal court jurisdiction is present. In such circumstances, it is entirely appropriate to consider the legislative history as an interpretive tool to determine what Congress intended the CAFA statute to mean. *See United States v. Perceval*, 803 F.2d 601, 602-03 (10th Cir. 1986) (considering legislative history when statute was silent on issue).

Indeed, the Tenth Circuit has already relied on this very same legislative history and found that it reflects "Congress' stated intent" in enacting CAFA. *See Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 & n.2 (10th Cir. 2005) (relying on S. REP. NO. 109-14 to discern Congressional intent behind provision limiting time for appeal under CAFA).

In light of this clearly articulated Congressional intent, the vast majority of cases to consider the issue are in accord: CAFA eliminated the presumption in favor of remand and shifted the burden of proof to the party contesting federal jurisdiction. *See Berry v. American Express Publishing*, 2005 WL 1941151, *4 (C.D. Cal. June 15, 2005); *Lussier v. Dollar Tree Stores, Inc.*, No. CV 05-768-BR, 2005 WL 2211094, at *1 (D. Ore. Sept. 8, 2005); *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752 (D.N.J. 2005); *In re Textainer P'ship Secs. Litig.*, No. C 05-0969 MMC, 2005 WL 1791559, at *3 (N.D. Cal. July 27, 2005); *Waitt v. Merck & Co.,*

*Inc.*, 2005 WL 1799740, *2 (W.D. Wash. July 27, 2005); *Yeroushalmi v. Blockbuster Inc*, 2005 WL 2083008, *3 (C.D. Cal. July 11, 2005).[2]

      **B.    Intel has Submitted Sufficient Evidence to Meet Even the Pre-CAFA Burden of Proof.**

Even assuming that, notwithstanding CAFA, the defendant bears the burden of proving the amount in controversy, Intel's Notice of Removal provided evidence sufficient to establish that the amount in controversy in this case exceeds $5 million. Indeed, Intel is the only party that has submitted any evidence to assist the Court in evaluating the amount in controversy in this case. Chance's attempts to undermine that evidence – without submitting any contrary evidence of his own – are meritless.

      **1.    The Pre-CAFA Burden of Proof Only Requires Proof by a Preponderance of the Evidence.**

Plaintiff's critique begins with a blatant misstatement of the law: that defendants are required to prove the amount in controversy "to a legal certainty." (*See* Motion at 6, 10, 12).

---

[2] Plaintiff flatly misstates the holdings of these cases by claiming that these cases conclude "that some members of Congress wanted to shift the burden to the non-removing party on remand." *See* Motion at 5 & n.6. Each of these cases expressly found that CAFA expresses <u>Congressional</u> intent to shift the burden to the plaintiff. *See e.g., Berry*, 381 F. Supp. 2d at 1122-23 (finding that legislative history 'expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court").

The few cases on which plaintiff relies fail to give proper weight to the clearly expressed Congressional intent in the face of a silent statute. *See e.g., Schwartz v. Comcast Corp.*, No. Civ. A. 05-2340, 2005 WL 1799414, at *4-7 (E.D. Pa. July 28, 2005). Indeed, two of the cases that plaintiff cites – *Sneddon* and *Expedia* – did not even discuss the issue of whether CAFA eliminated the presumption against federal court jurisdiction. *See Sneddon v. Hotwire, Inc.*, No. C 05-0951 SI, 2005 WL 1593593, at *2 (N.D. Cal. June 29, 2005) (relying on pre-CAFA cases to establish burden of proof without considering impact of CAFA on presumption); *In re Expedia Hotel Taxes and Fees Litig.*, 377 F. Supp. 2d 904, 905 (W.D. Wash. 2005) (same). The *Expedia* court expressly approved considering the legislative history behind CAFA in determining when the action "commenced" but found it "uninstructive" on that point. *In re Expedia*, 377 F. Supp. 2d at 906. Had the issue of whether CAFA shifted the burden of proof actually been raised, the outcome likely would have been different in light of the clear legislative history.

Prior to CAFA, however, the Tenth Circuit established that the removing party must show by a mere preponderance of the evidence that the amount in controversy threshold has been met. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (finding that Tenth Circuit precedent "requires at a minimum that the jurisdictional amount be shown by a preponderance of the evidence"). *Accord Boeing Wichita Credit Union v. Wal-Mart Real Estate Business Trust*, 370 F. Supp. 2d 1128, 1129 (D. Kan. 2005) (citing *Martin* to impose preponderance of the evidence standard); *Frederick v. DaimlerChrylser Corp.*, No. 05-2085-JWL, 2005 WL 1319135, at *3 (D. Kan. May 12, 2005) (same); *Havens Protected "C" Clamps, Inc. v. Pilkington PLC*, No. 00-2035-JWL, 2000 WL 382027, at * 2 (D. Kan. March 28, 2000) (pre-*Martin* case relying on preponderance of the evidence standard).[3]

In arguing for a stricter standard, plaintiff relies on a single, pre-CAFA district court decision, *Coca-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co.*, 198 F. Supp. 2d 1280, 1285 (D. Kan. 2002). In *Coca-Cola*, this Court suggested that where (unlike this case) the plaintiff pleads <u>a specific dollar figure</u> for damages that falls below the jurisdictional threshold (in that case, the claim was for exactly $74,000), a removing defendant must meet a higher burden to establish jurisdiction: a "reasonable certainty." *Id.* at 1285 ("This Court adopts the 'reasonable certainty' standard…") (emphasis added). The more recent cases in this District – *Boeing Wichita Credit Union v. Wal-Mart Real Estate Business Trust*, 370 F. Supp. 2d 1128, 1129 (D. Kan. 2005) and *Frederick v. DaimlerChrylser Corp.*, No. 05-2085-JWL, 2005 WL 1319135, at *3 (D. Kan. May 12, 2005) – have both relied on the preponderance of the evidence standard espoused in *Martin*. Moreover, the plaintiff here has not plead a specific dollar figure

---

[3] The *Havens* case, which endorsed the preponderance of the evidence standard, was repeatedly cited by the plaintiff in his Opposition to Intel's Motion to Stay. (*See* DE 9).

for his damages and, therefore, cannot take advantage of the *Coca-Cola* "exception" in any event. *See id.* ("[I]n cases such as the one at bar, where plaintiff has expressly pled an amount of damages that is lower than the … threshold, this Court concludes that defendant should be held to a higher burden than a preponderance of the evidence.").

Most importantly, the plaintiff misrepresents the holding of *Coca-Cola* by repeatedly claiming that the defendants must prove the amount in controversy "to a legal certainty." *See* Motion at 6, 10, 12. The *Coca-Cola* court <u>specifically considered and rejected</u> the legal certainty standard in favor a more lenient standard – "reasonable certainty."[4] *Id.* at 1284-85. With good reason: the "legal certainty" standard that the plaintiff endorses has been subject to significant judicial criticism for "fail[ing] adequately to protect against plaintiff manipulation of the state and federal fora." *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 487-88 (S.D. W. Va. 2001). Plaintiff cites to absolutely no precedent to support his "legal certainty" standard and it is contrary to Tenth Circuit precedent. *See Martin*, 251 F.3d at 1290. That standard has no place in this action.

### 2. Intel has Submitted Factual Evidence Sufficient to Demonstrate that the Amount in Controversy Exceeds $5 Million.

Regardless of whether this Court applies the preponderance of the evidence or reasonable certainty standards, Intel has submitted sufficient facts to meet the burden of showing that the amount in controversy in this matter exceeds $5 million. In its Notice of Removal, Intel relied on a declaration that laid out underlying facts to estimate the amount in controversy. *See Laughlin v. K-Mart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (holding, prior to CAFA, that "[t]he

---

[4] The exact language adopting the "reasonable certainty" standard appears on page 7 of plaintiff's Motion.

burden is on the party requesting removal to set forth, in the notice of removal itself, the underlying facts supporting the assertion that the amount in controversy exceeds [the jurisdictional threshold].").

That evidence consisted of Census data that provided an estimated number of computers purchased in the Class Counties during the class period, as well as published business records from a major retailer that were used to estimate the average sales price of a computer during the class period. Specifically, that evidence estimated the Class Counties residents purchased a total of 41,847 PCs and that the average sales price of those computers was at least $463.[5] Using these figures, the estimated amount in controversy regarding Chance's "full consideration" claim exceeds $19 million, or nearly four times the jurisdictional threshold.[6]

This is exactly the sort of evidence that courts typically rely on when considering remand motions. If the value of the plaintiff's claims is not apparent, then the defendants "may support federal jurisdiction by setting forth the *facts* – [either] in the removal petition [or] by affidavit – that support a finding of the requisite amount." *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir. 2003) (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).[7] In *Gafford*, for example, the Sixth Circuit found that the jurisdictional minimum was

---

[5] *See* DE 1, Defendant Intel Corporation's Notice of Removal, Exhibit A (Declaration of Gregory F. Wells) ("Wells Declaration") (relying on publicly-available census data and computer sales price information to estimate amount in controversy).

[6] Plaintiff's only substantive attack on this evidence is to claim that the percentage of Kansas residents in the class counties is "wrong" and should have been 5.52% rather than 5.62% "based on 2004 estimates." *See* Motion at 11 & n.10. As explained in the Wells Declaration, however, the 5.62% figure (which is correct) represents the average population in the Class Counties throughout the entire class period, not just 2004. *See* Wells Declaration, ¶ 7.

[7] Plaintiff includes an out-of-context quotation from *DeAguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) that "the affidavit of a lawyer without personal knowledge of the extent of each of the plaintiffs' claims sheds little, if any, light on the actual amount in controversy." The affidavit in *DeAguilar* was nothing more than a conclusory statement, unsupported by underlying facts, regarding the amount in controversy. *See id.* at 57-58. Thus, the only similarity between it and the Wells Declaration is that both were authored by lawyers.

satisfied based on testimony from defendant's attorney that the value of the plaintiff's claim for back pay exceeded the jurisdictional minimum. *Gafford v. General Elec. Co.*, 997 F.2d 150, 160-61 (6th Cir. 1993). Intel has presented competent proof – based on underlying, undisputed facts and the plaintiff's own allegations – to estimate the amount in controversy.

Plaintiff's only criticism of this estimate – that Intel failed to account for purported demographic differences between the residents of the Class Counties and the rest of Kansas – is a tempest in a teapot. Plaintiff claims that Intel's estimate is too high because the Class Counties "have attributes that greatly diminish computer purchases, such as: (1) a significantly higher percentage of Hispanics than the state average; (2) lower education level than the state-wide average; and (3) lower household income level than the statewide average." (Motion at 11). Putting aside the pejorative manner in which plaintiff describes the data that he presents, plaintiff fails to demonstrate how these demographic vagaries render the aggregate value of the claim less than $5 million.

A quick look at the data explains why. Intel's estimate showed that the amount in controversy was roughly <u>four times</u> higher than the jurisdictional minimum. Given these circumstances, the demographics cited by the plaintff can only reduce the amount in controversy below $5 million <u>if</u> they reflected a likelihood that residents in the Class Counties purchased computers at a rate well over 75% less than the national rate.[8]

The data presented in plaintiff's Motion simply do not bear this out. Obviously, not every resident in the Class Counties falls within one of the three demographic groups that

---

[8] Neither does plaintiff acknowledge the value of the "cost of suit, including reasonable attorneys' fees" sought by the plaintiff. *See Yeroushalmi*, 2005 WL 2083008, at *5 (finding that CAFA authorizes aggregation of attorneys fees into amount in controversy requirement).

plaintiff claims make less-frequent computer purchases (and plaintiff certainly provides no basis to figure out who does and does not fall into what category), but even if one accepts this unreasonable assumption, this is not sufficient to reduce the amount in controversy below the jurisdictional threshold. Hispanic households purchased new computers between 2001 and 2003 at a rate of approximately 20% less (29.6% vs. 39.1%); the lowest income band ($10,000-$14,999) at a rate of approximately 48% less (42.6% vs. 22.2%) and the lowest education bracket ("less than high school graduate") at a rate of 55% less (37.9% vs. 17.1%). Those differences simply are not enough to suggest that the amount in controversy is four times less than Intel's estimate and less than $5 million.

In addition to failing to show whether and to what extent the purported demographic differences impact the amount in controversy, plaintiff also fails to account for his self-serving selection of the demographic variables highlighted in his remand motion. For example, while plaintiff notes that the Class Counties have a higher Hispanic population than other Kansas counties (which he translates into fewer computer purchases), he ignores the fact that the Class Counties also have a higher population of Asians than other Kansas counties.[9] Plaintiff's own exhibit demonstrates that Asians purchase <u>more</u> computers than the national average. (Wells Opposition Declaration, ¶ 8).[10] Plaintiff's failure to consider all of these relevant demographics severely undermines his arguments about the amount in controversy in this matter.

The plaintiff also fails to address the several ways in which Intel's estimate understates the amount in controversy. As stated in the Notice of Removal, the estimate does not include

---

[9] *See* Exh. A, Declaration of Gregory F. Wells in Support of Defendant Intel Corporation's Opposition to Plaintiff's Motion to Remand ("Wells Opposition Declaration"), ¶ 5.

[10] The Class Counties also have higher concentrations of men as well as larger households; plaintiff's exhibit shows that all of these groups make more computer purchases than the average. Wells Opposition Declaration, ¶ 8.

purchases of business computers (which are included within the class that plaintiff seeks to represent, Petition ¶ 33). (*See* Wells Declaration, at 2 & n.2). Similarly, the estimate of computer prices was limited to desktop computers, even though plaintiff's class seeks to recover for Intel processors sold in notebook computers which, as a general matter, are priced even higher. (*Id.* ¶ 11).

Plaintiff's post-removal effort to limit the amount in controversy by claiming that the plaintiff is only seeking to recover the "full consideration" for microprocessors, and not the PCs, is unavailing. (*See* DE 10, Plaintiff's Motion to Remand, Declaration of Rex A. Sharp, ¶ 9 ("Plaintiff seeks recovery for the 'full consideration; or the 'price paid' for the product that was the subject of the restraint of trade, namely the Intel microprocessor.")). That limitation appears nowhere in plaintiff's petition, and adding it to the remand motion now is meaningless. *See In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.").

Finally, unable to carry his burden of proving that the amount in controversy is less than $5 million, plaintiff makes an unsupportable request that he be permitted to conduct "jurisdictional discovery" on this issue. (*See* Motion at 4). The plaintiff does not explain why he needs this discovery, and it is clear from the record that discovery is not appropriate. Plaintiff alleges that "[t]he classwide claim is less than $5 million." (*See* Petition ¶ 11). Federal Rule 11 and its Kansas counterpart require the plaintiff to "have evidentiary support" for this allegation. Fed. R. Civ. P. 11(b)(3); Kan. Stat. Ann. § 60-211(b)(3). Assuming that plaintiff has complied with Rule 11, he does not need discovery to make his case that the amount in controversy is less than $5 million. Further, in showing that the amount in controversy in this case exceeds the

jurisdictional minimum of $5 million, Intel relied entirely on publicly-available information. (*See* Wells Declaration, ¶¶ 4-11). The plaintiff had access to this information, as well as a plethora of other publicly available sources, to attempt to meet his burden that the amount in controversy does not exceed $5 million. His failure is not a justification for discovery.

### III. Conclusion.

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.

DATED: November 16, 2005

/s/ Tim J. Moore
Tim J. Moore
Robert W. Coykendall
MORRIS LAING
Old Town Square
300 N. Mead, Suite 200
Wichita, Kansas 67202
(316) 262-2671 (O)
(316) 262-6226 (Fax)

and

David M. Balabanian
Christopher B. Hockett
Joy K. Fuyuno
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Richard A. Ripley
Gregory F. Wells
BINGHAM McCUTCHEN LLP
1120 20th Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Attorneys for Defendant
INTEL CORPORATION

**CERTIFICATE OF SERVICE**

      I, the undersigned, do hereby certify that on this 16th day of November, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Rex A. Sharp
Gunderson, Sharp & Walke, LLP
4121 West 83rd Street, Ste. 256
Prairie Village, KS 66208
rsharp@midwest-law.com


Barbara C. Frankland
Gunderson Sharp & Walke, L.L.P.
4121 West 83rd Street, Ste. 256
Prairie Village, KS 66208
bfrankland@midwest-law.com



                                                        s/ Tim J. Moore

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MARVIN D. CHANCE, JR., <br> on behalf of himself and <br> all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTEL CORPORATION, a Delaware <br> corporation, and INTEL KABUSHIKI <br> KAISHA, a Japanese corporation, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 6:05-cv-01303-JTM-KMH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF GREGORY F. WELLS IN SUPPORT OF DEFENDANT INTEL CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

1.  My name is Gregory F. Wells. I am over the age of 18 and competent to give testimony. If called upon, I would testify as to the facts in this Declaration.

2.  I am an associate at the law firm of Bingham McCutchen LLP. Bingham McCutchen represents Intel Corporation in this matter.

3.  Exhibits A1 and A2 to Plaintiff's Motion to Remand contain U.S. Census Bureau data about the 18 Class Counties at issue in this case.

4.  This data states that certain demographic groups are found in a higher percentage in the Class Counties compared to the entire state of Kansas.

5.  For example, the data shows that the Asian population in the Kansas counties is 1.75%, whereas the Asian population in the rest of Kansas is 1.70%. Similarly, males account for 50.73% of the population in the class compared to the statewide average of 49.40%.

6.  Households in the Class Counties also tend to be larger, with an average of 2.67 persons per household compared to the state average of 2.51 persons per household.

7. Exhibit B to Plaintiff's Motion to Remand contains U.S. Census Bureau data about computer purchases broken down by multiple demographic groups.

8. Plaintiff's Exhibit B demonstrates that each of the groups identified in paragraphs 5 and 6 above purchase computers at a rate that exceeds the national average. For example, from 2001-2003, 49.1% of Asian households purchased a new computer compared to an average of 37.9% for all households. Similarly, male-headed households purchased computers at a greater rate than female-headed households (41.0% v. 34.5%). This exhibit also shows that as household size increases, so does the rate of computer purchases.

Under penalty of perjury, I declare that the foregoing is true and accurate to the best of my knowledge.

Dated: November 16, 2005

_____
Gregory P. Wells

DCDOCS/640146.1                                    2