# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| MARVIN D. CHANCE, JR., on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 6:05-cv-01303-JTM-KMH ) |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | ) ) ) ) ) |
| Defendants | ) ) |

## **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO REMAND**

Plaintiffs' Petition belongs in state court. It asserts state-law claims under the Kansas Antitrust Act, K.S.A. 50-101, *et. seq*., on behalf of a class of residents in 18 Southwest Kansas counties who purchased for end use (not for resale) Intel microprocessors between January 1, 2000 and the present.[1] Plaintiffs' damages amount to less than $5 million so federal court jurisdiction is lacking under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 199 Stat. 4 (2005), codified in pertinent part at 28 U.S.C. sections 1332(d) and 1453.

---

[1] Defendants argue that 52 other pending federal cases alleged Kansas Antitrust Act claims. Defendants' Reply in Support of Stay (Doc. 12), p. 4, and Defendants' Opp. to Remand (Doc. 13), p.1. None of those 52 cases, however, appears to have any Kansas class representative that would have standing to assert these Kansas "full consideration" claims that are uniquely different (larger and easier to prove) than the other "overcharge" only indirect purchaser states.

Defendants also continue to argue erroneously that most of the MDL cases mentioning Kansas were filed before Plaintiff filed the First Amended Petition in this case. See Defendants' Opp. Brief (Doc. 13) p. 2, n. 1. But Plaintiff's Original Petition was filed July 7, 2005.

I.       **There Is No Subject Matter Jurisdiction Under Class Action Fairness Act.**

Defendant Intel has removed this case from Kansas state court claiming, based entirely on defense counsel's original and supplemental affidavits, that plaintiffs' class-wide damages are in excess of $5 million dollars.  Before a federal court (or worse an MDL court with over 70 cases) wastes its time, and that of the parties, on a case, it is imperative that it have subject matter jurisdiction.  For that reason, the burden of proof is considerably higher than a procedural motion for class certification or even a preponderance of evidence standard on the merits—it must be right to a "reasonable certainty". Defendants may have met the lower class certification standard for proving class-wide damages (indeed, they have at least shown a methodology for determining class-wide damages), but not the higher standards of preponderance or reasonable certainty. Thus, this Court should remand the case.

CAFA changed much about class actions, and those changes are embodied in the express language of the statute. No language remotely exists about changing the burden of proof on removal. Defendants point to none, but ask this Court to legislate it by the same judicial activism "big business" claimed state courts engaged in justifying CAFA in the first place. Such legislation would be bad policy anyway as federal court jurisdiction could be invoked by any Defendant simply because at the outset of Plaintiff's case, before any discovery, Plaintiff could not prove the amount of class-wide damages. No matter that the Defendant knew better (and withheld it from the Court) or that Plaintiff after discovery could prove it later (perhaps destroying jurisdiction). This would be the same inefficient removal process that federal courts have rejected for decades. If any type of case warrants retention of the age-old law on removal, class action are it since

2

Defendants often know more about the aggregate damages class-wide than an individual Plaintiff (class representative) unlike a Plaintiff in an individual case which may know the extent of his damages.

CAFA is a law with language passed by a majority of both the House and the Senate and signed by the President. As such, legislative history drawn from some members of the House, some in the Senate, a particular committee in either the House or the Senate, or even comments from the President are rarely helpful in determining what was intended. Certainly such commentary can show what was considered by a committee or by a member of Congress, but not overall legislative intent. For that, the best source is the language of CAFA itself.

As expected, Intel relies almost exclusively on select comments made in the Senate Judiciary Committee Report to *create*, not interpret, removal law. Obviously this Senate Judiciary Committee Report was not the will of all members of Congress as they are not all on the Committee, and the Report could not even have been read by all of Congress since it was not published until after Congress passed CAFA.[2] See *S. Rep. No. 109-14*. For instance, Defendants admit that prior to CAFA that the "removal statute is strictly construed against removal jurisdiction, all doubts being resolved in favor of remand", Defendants' Opp. p. 4, but claim CAFA reversed that so that when in doubt, "the court should err in favor of exercising jurisdiction over the case." Id. at 5 (citing S. Rep. No. 109-14, at 42). Of course, if that were the law, it would be in the statute, not

---

[2] S. Rep. No. 109-14, at 79 ("The circulation and filing of this report occurred after passage of the legislation for Senate consideration of the underlying bill. Indeed, it was after the House of Representatives passed this legislation and on the same day that the President singed the measure into law.").

just in a Committee Report. Some members in Congress clearly contemplated changing the law as Defendants now urge, but they did not get it done. The law remains the same.

Likewise, Defendants admit that the party asserting jurisdiction, including Defendants on removal, prior to CAFA had the burden to prove jurisdiction, but after CAFA the burden would always be on the Plaintiff to disprove it. Defendants' Opp. pp. 5-6 (again citing only S. Rep. No. 109-14, at 44). Again, a change contemplated, but not made into law.

The newest case on the issue before this Court is the only Circuit court ruling in *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. Oct. 20, 2005). Defendant Countywide had evidence about class-wide damages and proved it with a simple affidavit to meet its burden to prove removal jurisdiction.

> Countrywide concedes that it sent at least 3,800 advertising faxes, and § 227(b)(3) provides that the court may award $500 per fax, a sum that may be trebled if "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection". The award thus could reach $5.7 million.

*Id*. at 447 (noting "If Brill can show that Countrywide sent more than the 3,800 junk faxes, it could be higher still.") The Seventh Circuit in *Brill* followed the usual removal law that the removing party had the burden to prove jurisdiction:

> The district court began by allocating to Countrywide, as the proponent of federal jurisdiction, the burden of persuasion on the amount in controversy. That the proponent of jurisdiction bears the risk of non-persuasion is well established. See, e.g., *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 607 (7th Cir.1997); *Smith v. American General Life & Accident Insurance Co.,* 337 F.3d 888, 892 (7th Cir.2003). Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). And the rule makes practical sense. If the burden rested with the proponent of remand, then Countrywide could have removed without making any effort

4

to calculate its maximum exposure, and without conceding that it had faxed thousands of ads. That would have thrown on Brill the burden of showing that Countrywide could not possibly have sent more than 3,333 junk faxes (for if the award can reach $1,500 per fax then it is No. 3,334 that puts the stakes over $5 million). Brill would have no way to show this early in the litigation, and plaintiffs in other kinds of suits would encounter similar difficulty. When the defendant has vital knowledge that the plaintiff may lack, a burden that *448 induces the removing party to come forward with the information--so that the choice between state and federal court may be made accurately--is much to be desired.

Countrywide maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators--less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

We recognize that a dozen or so district judges have treated this passage as equivalent to a statute and reassigned the risk of non-persuasion accordingly. See, e.g., *Berry v. American Express Publishing Corp.,* 381 F.Supp.2d 1118 (C.D.Cal.2005); *Natale v. Pfizer, Inc.,* 379 F.Supp.2d 161 (D.Mass.), affirmed on other grounds, 424 F.3d 43 (C.A.1 (Mass)2005). But naked legislative history has no legal effect, as the Supreme Court held in *Pierce v. Underwood,* 487 U.S. 552, 566-68, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve. Cf. *Cherokee Nation of Oklahoma v. Leavitt,* 543 U.S. 631, 125

5

> S.Ct. 1172, 1181-82, 161 L.Ed.2d 66 (2005); *Exxon Mobil Corp. v. Allapattah Services, Inc.,* --- U.S. ----, 125 S.Ct. 2611, 2625-27, 162 L.Ed.2d 502 (2005).

*Id*. at 447-48.[3]

The *Brill* Court also dealt with what that burden of proof was for the removing party when Plaintiff did *not* attempt to limit the amount in controversy.

> A defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him; as master of the case, **the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold.** Thus part of the removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands. That's the point of statements in our decisions that the removing litigant must show a reasonable probability that the stakes exceed the minimum. See, e.g., *Smith v. American General Life & Accident Insurance Co.,* 337 F.3d 888, 892 (7th Cir.2003); *Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir.1997). The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

---

[3] Defendants suggest that *Pritchett v. Office Depot*, *Inc*., 360 F. Supp. 2d 1176 (D. Colo. 2005), *aff'd*, 404 F.3d 1232 (10th Cir. April 11, 2005), *opinion amended and superseded*, 420 F.3d 1090 (10th Cir. Aug. 18, 2005), *leave to appeal denied*, 2005 WL 1994020 (10th Cir. 2005), is somehow to the contrary, but it is not. *Pritchett* dealt with an entirely different issue—when is a case "commenced" under CAFA—and was interpreting the language found in the statute itself (the word "commenced" is actually used) as distinct from making up the law where there is no ambiguous phrase or word in the statute about burden of proof on removal. Instead, *Pritchett* used the Senate Committee Report, not referencing that it was published after-the-fact, to construe the "not less than 7 days" language that would lead to an absurdity on the timing of an interlocutory appeal and was just a "typographical error", *id*. 1093 n.2, and narrowly construing the word "commenced". *Id*. at 1095 (acknowledging that legislative history "is sometimes suspect as a persuasive interpretative tool", "[o]rdinarily, individual floor statements are entitled to little weight", *id*. at 1096, declining to follow the broad and "general sentiments" expressed in the Senate Committee Report, *id*. at 1097 n.7, and following the "public policy" of removal jurisdiction to narrow construction. *Id*. at 1097. "Given the Tenth Circuit's admonition that if there is ambiguity as to whether a statute confers federal jurisdiction over a case, a "reasonable, narrow construction" of the statute is compelled." *Consumer Crusade, Inc. v. Scientific Research Group, Inc.*, 2005 WL 2064403 *1 (D.Colo. Aug. 23, 2005) (citing *Pritchett*).

6

*Id*. at 449 (emphasis added). But because, unlike here, the "complaint did not set a cap on recovery--as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $5 million in aggregate", the *Brill* Court found that "Countrywide did all that is necessary by admitting that one of its employees sent at least 3,800 fax ads. From this and the statutory text one can determine that the controversy exceeds $5 million." *Id*. at 449.

Here, however, Plaintiff in this case did establish such a cap in its Petition. This Court in *Coca-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co.,* 198 F.Supp.2d 1280, 1285 (D. Kan. 2002) found that for the removing Defendant to overcome Plaintiff's "master of his case" allegation that the amount in controversy is *below* the threshold amount, Defendant must prove the amount in controversy is greater than the threshold amount (here, $5 million) by a "reasonable certainty".[4] While Countrywide in *Brill* may have met that test by its admission based on first hand knowledge that it sent a sufficient number of faxes valued at $500/fax[5], Defendant here

---

[4] Defendant's Response, p. 8, erroneously cites to two cases as changing the "reasonable certainty" rule, but in those two cases Plaintiff did not allege the amount in controversy was below the jurisdictional threshold. *Boeing v. Wal-Mart*, 370 F. Supp.2d 1128, 1129 (D. Kan. 2005) (where "plaintiff's state court petition sought only declaratory relief; thus, it did not include a demand for money damages*"); Frederick v. DaimlerChrysler Corp.,* 2005 WL 1319135 *3 (D. Kan. May 12, 2005) (prayer seeks class damages "in excess of $75,000", so the "$75,000 number is clearly an aggregate amount for all of the plaintiffs' claims rather than the claims of any one individual plaintiff. It is well settled that the claims of the class members generally may not be aggregated to satisfy the amount-in-controversy requirement.").

[5] *See also Senterfitt v. SunTrust Mortg., Inc*., 385 F.3d 1377 (S.D. Ga. Aug. 31, 2005) (proving $5 million jurisdictional amount on removal with personal knowledge information since "mortgagor sought total damages not to exceed $10,000 per class member, and mortgagee [admitted that it] sent approximately more than 14,000 payoff statements by facsimile last year in the state of Georgia [which Plaintiff] Senterfitt does not offer any evidence that casts doubt on SunTrust's estimates of the number of faxed

7

has made no such first hand showing of the number of allegedly overcharged microprocessors in the 18 Western Kansas counties (only some estimates that were flawed due to the well-known demographic differences between Western Kansas and the rest of the State) and refused to even detail the average value of its microprocessors during the Class Period (which is information well known to Intel[6]).

This latter shortcoming is all the more telling since even in its Response Brief, pp. 12-13, Intel stonewalls the price of the *microprocessor* at issue and continues to argue about the irrelevant cost of the total value of the computer systems (which is not at issue). The Petition repeatedly states that the monopoly is of Intel's *microprocessor*, not the computer made by different manufacturers.[7]  In short, Intel did not even meet the lower preponderance burden.

Intel's belated effort to shore up its lack of proof with anther affidavit attached to its Response Brief is factually insufficient from the demographics (probably stemming from defense counsel's lack of familiarity with Western Kansas) and legally invalid as coming too late.  *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1291 n. 4 (10th Cir.

---

loan payoff statements" ).  Here, there is no personal knowledge admission and Plaintiff's counsel submitted evidence from the same source as Defendants that cast doubt on Defendants' estimates.

[6] Had Intel timely provided this information to the Court, jurisdictional discovery would have been appropriate to determine its accuracy to meet the "reasonable certainty" standard.  As it is, Intel has failed to even attempt to carry its burden by indicating the price of its "chips" sold to computer manufacturers.

[7] *See* First Amended Petition Paras. 1 ("x86 microprocessors"), 2 (Intel's revenue from "sales of microprocessors"), 3 ("chipmaker"), 4 (Intel's monopoly designed to "quash product-based competition on price and performance in the microprocessor industry"), 5 (AMD is "Intel's primary microprocessor competitor"), 7 (Plaintiff and "the Class he seeks to represent are indirect purchasers of Intel's x86 microprocessors who have been damaged by Intel's anticompetitive, monopolistic conduct"), 20 ("With over 90% of the market, Intel's monopoly enables it to control pricing for the microprocessors"), and many other paragraphs.

2001); *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.,* 2005 WL 2160137 *2 (10th Cir. Sept. 8, 2005); *Boeing v. Wal-Mart*, 370 F. Supp.2d 1128, 1130 (D. Kan. 2005).[8]

The case should be remanded. Intel has failed to carry its heavy burden of proof on removal to a reasonable certainty.

Plaintiff also should recover fees and expenses for the wrongful removal. *Frederick v. DaimlerChrysler Corp.,* 2005 WL 1319135 *4 (D. Kan. May 12, 2005) *Frederick v. DaimlerChrysler Corp.*, 2005 WL 1522147 (D.Kan. June 28, 2005).[9]

Respectfully submitted,

\_\_\_s/Rex A. Sharp_____
Rex A. Sharp #12350
Barbara C. Frankland #14198
Gunderson, Sharp & Walke, L.L.P.
4121 W. 83rd St., Ste. 256
Prairie Village, KS 66208
913-901-0500
913-901-0419 Fax
rsharp@midwest-law.com
bfrankland@midwest-law.com

---

[8] Nor can Defendant raise new legal arguments in the Response Brief, p. 11 n.8, about the value of attorneys' fees. Besides, Defendant provides no factual information about that alleged value anyway.

[9] Attorneys' fees should be awarded even if the attempted removal was not in bad faith. *See Martin*, 125 S.Ct. 1941, 161 L.Ed.2d 772 (April 25, 2005) (granting certiorari on this remand attorneys' fee issue), 2005 WL 3112005 (Oral Arg. Heard, Nov. 8, 2005).

9

## Certificate of Service

I, Rex Sharp, do hereby certify that on the 6th day of December, 2005, I served a true and correct copy of the above and foregoing through the Notice of Electronic Filing for parties and counsel who are Filing Users:

Tim J. Moore
Robert W. Coykendall
MORRIS LAING
Old Town Square
300 North Mead, Suite 200
Wichita, Kansas 67202

David M. Balabanian
Christopher B. Hockett
Joy K. Fuyuno
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Richard A. Ripley
Gregory F. Wells
BINGHAM McCUTCHEN LLP
120 20TH Street, NW, Suite 800
Washington, DC 20036

Attorneys for Defendants

                                                            __s/Rex A. Sharp_____